1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE CEMENT MASONS & PLASTERERS HEALTH & WELFARE TRUST, et al.,<br><br>              Plaintiffs,<br><br>       v.<br><br>CONCRETEMAN, INC., et al.,<br><br>              Defendants. | CASE NO. C13-1698JLR<br><br>ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |

Before the court is Defendant Global Contractors, LLC's ("Global") motion for partial summary judgment.  (Mot. (Dkt. # 10).)  This case involves labor law.  Global asks the court for partial summary judgment with respect to two issues in this case that would narrow the scope of the litigation moving forward.  (*See id.*)  Specifically, Global asks the court to hold that the operative labor agreement in this case is expired and that, as a matter of law, Global is not the "alter-ego" of Defendant Concreteman, Inc.

1   ("Concreteman").  (*See id.*)  For the reasons described below, the court DENIES Global's

2   motion.  The operative labor agreement is not expired, and there are fact issues

3   precluding summary judgment on the "alter-ego" issue.  Accordingly, Global is not

4   entitled to summary judgment with respect to either of these issues.

## I.   BACKGROUND

6          This is a labor dispute between a concrete company and several unions.

7   Defendant Concreteman is a subcontractor specializing in pervious concrete—a porous,

8   permeable form of concrete that allows water to easily pass through it into the ground.

9   (*See* Fain Decl. (Dkt. # 11) ¶¶ 4-5.)  Concreteman has been doing business in Washington

10  since 1994.  (*Id.* ¶ 2.)  On April 14, 2008, Concreteman entered into a "Compliance

11  Agreement" ("CA") with a local cement masons union referred to as "Local 528

12  affiliated with the Operative Plasterers and Cement Masons International Association,

13  AFL-CIO" ("Union").  This dispute arises directly out of the CA.

14         The CA is not an ordinary collective bargaining agreement ("CBA").  Instead, it is

15  a contract under which third parties, in this case Concreteman, agree to abide by the

16  terms of an already-existing CBA.  (*See, e.g.*, Fain Decl. Ex. A.)  The CA is what is

17  known as a "pre-hire agreement."  (*See id.*); *Orange Belt Dist. Council of Painters No. 48*

18  *v. Kashak*, 774 F.2d 985, 987-88 (9th Cir. 1985).  A pre-hire agreement is "a labor

19  contract negotiated between a construction employer and a 'union [that] does not

20  represent a majority of the employees at the time of contract execution.'"  *Id.* (citing

21  *Const. Erectors, Inc. v. NLRB*, 661 F.2d 801, 804 (9th Cir. 1981)).  Thus, Concreteman

22  agreed to abide by a CBA despite the fact that its employees were not actually unionized

ORDER- 2

at the time the CA was signed.  (*See id.*)  Specifically, Concreteman agreed to abide by a CBA between the Union and "individual members of the Associated General Contractors of Washington."[1]  (Fain Decl. Ex. A.)

As part of the CA, Concreteman agreed to make contributions into certain benefit trust funds.  Signatories of the CBA agreed to pay various "fringe benefits" into Union-operated trust funds, including health and security, pension, and other benefits.  (*Id.* Ex. B at 17-20.)  Concreteman agreed to do this when it signed the CA, committing to abide by the terms of the operative CBA.  (*Id.* Ex. A, B.)

Until recently, Concreteman honored this obligation.  (*Id.* ¶¶ 17, 26.) Concreteman made regular payments into the specified trust funds based on the number of hours worked by its employees in accordance with the CBA.  (Bernett Decl. (Dkt. # 18) Ex. A (record of contributions).)  However, around June 2013, the payments allegedly ceased and Concreteman stopped providing the union with information necessary to determine what payments were due.  (*Id.*; Compl. (Dkt. # 1) ¶¶ 19-21.)

The trust funds brought this action to collect monies allegedly owed.  (*See generally* Compl.)  The trust funds asked for injunctive relief to enforce the terms of the CA and the CBA.  (*Id.* ¶¶ 14-21.)  In addition to Concreteman, the trust funds named Global as a defendant.  Global is a general contracting company owned by the same husband and wife that own Concreteman—Denise and Charles Fain.  (*Id.* ¶¶ 7, 9.)  The trust funds allege that Global is an "alter-ego" of Concreteman and that, accordingly,

---

[1] Concreteman asserts that it signed the CA because it was pressured to do so "in order to relieve pressure caused by the picket line" at a particular job site.  (Fain Decl. ¶ 14.)

1  under relevant principles of labor law, Global should be held liable for Concreteman's

2  failure to make required contributions.  (*Id.* ¶¶ 22-31.)

3      Global filed this motion for summary judgment.  In the motion, Global asks the

4  court to find that (1) the CA has expired and therefore the court lacks jurisdiction over

5  this action; and (2) Global is not the alter-ego of Concreteman but a separate company

6  that cannot be held liable for any failure to contribute by Concreteman.  (*See* Mot.)

7  **II.    ANALYSIS**

8  **A.    Summary Judgment Standard**

9      Summary judgment is appropriate if the evidence, when viewed in the light most

10  favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

11  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

12  P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

13  477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of

14  the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is

15  "genuine" if the evidence is such that reasonable persons could disagree about whether

16  the facts claimed by the moving party are true.  *Aydin Corp. v. Loral Corp.*, 718 F.2d

17  897, 902 (9th Cir. 1983).

18      [T]he issue of material fact required . . . to be present to entitle a party to
19      proceed to trial is not required to be resolved conclusively in favor of the
      party asserting its existence; rather, all that is required is that sufficient
      evidence supporting the claimed factual dispute be shown to require a jury
20      or judge to resolve the parties' differing versions of the truth at trial.

21  *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

22

1   The court is "required to view the facts and draw reasonable inferences in the light

2   most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

3   The court may not weigh evidence or make credibility determinations in analyzing a

4   motion for summary judgment because these are "jury functions, not those of a judge."

5   *Anderson*, 477 U.S. at 249-50.

6       The moving party bears the initial burden of showing there is no genuine issue of

7   material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S.

8   at 323.  If the moving party meets his or her burden, the non-moving party "must make a

9   showing sufficient to establish a genuine dispute of material fact regarding the existence

10  of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658.

11  **B.    Global's Expired Agreement Argument**

12      To begin, Global argues that there is "no question" that the CA expired before the

13  relevant timeframe, depriving the court of jurisdiction over this action.  (Mot. at 7.)  As a

14  general matter, Global is correct that district courts lack jurisdiction to adjudicate

15  disputes of this nature if the operative bargaining agreement between the parties has

16  expired. *Laborers Health and Welfare Trust Fund for N. Cal. v. Advanced Lightweight*

17  *Concrete Co., Inc.*, 484 U.S. 539, 550 (1988); *UA Local 343 United Ass'n of Journeymen*

18  *v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465 (9th Cir. 1995).  Global argues that the CA

19  expired in June, 2012, and that this action relates only to conduct that occurred after that

20  date.  (Mot. at 7.)

21      Global is mistaken—the agreement has not expired.  Global argues that the CA

22  expired when the underlying CBA expired, in June 2012, notwithstanding the fact that

1   the CBA itself was renewed.  (*Id.*)  But the CA requires a different result.  The CA

2   explicitly states that it continues in effect if the underlying CBA is renewed or replaced

3   with a new CBA, unless and until the CA is terminated by one of the parties:

> This Compliance Agreement shall be effective as of the date of signing and
> shall continue in effect during the term of the [CBA] and its supplements,
> renewals, amendments, modifications, extensions, successors, and
> substitutes[.]   Either Local 525 or the Employer may terminate this
> Compliance Agreement as of the termination date specified in the [CBA] or
> its successors by giving the other party written notice of an intention to
> terminate not less than sixty (60) days, nor more than ninety (90) days,
> prior to the expiration date specified in the [CBA] in effect at the time of
> giving notice.

9   (Fain Decl. Ex. A.)  Here, it is undisputed that the union successfully negotiated a

10  successor CBA and that neither party terminated the CA in a timely fashion.  (Branfield

11  Decl. (Dkt. # 15) Ex. Transcript 2 at 15; Surreply (Dkt. # 23) at 3; Coffelt Decl. (Dkt.

12  # 17) ¶ 5.)  Consequently, the CA remains in effect by its unambiguous terms.  (*See* Fain

13  Decl. Ex. A.)

14          Indeed, Global appears to concede this point.  In its initial motion, Global asserts

15  the above argument.  (*See* Mot. at 6-7.)  Plaintiffs respond with a rebuttal argument based

16  on the language of the CA, but Global does not respond to Plaintiffs' rebuttal argument,

17  choosing instead to raise new and different arguments.  (Compare Resp. at 6-8 *with* Reply

18  (Dkt. # 20) at 1-4.)  Failure to respond to an argument may be treated as an admission

19  that the argument has merit.  *See, e.g.*, *Lombardi v. Columbia Recovery Grp., LLC*, No.

20  C12-1250 RSM, 2013 WL 5569465, at *4 (W.D. Wash. Oct. 9, 2013).  In any event, the

21  CA clearly demarcates its effective dates, precluding Global's argument that the CA has

22  expired.

ORDER- 6

1    Global raises several additional arguments on this issue, but none are persuasive.

2    Specifically, Global argues that it was permitted to unilaterally terminate or repudiate the

3    CA because there is turnover in its work force and because the Union "re-opened" the

4    CBA.  (Mot. at 8-9; Reply at 1-4.)  However, these theories rely on disputed facts

5    (*compare, e.g.*, Mot. at 8-9 *and* Reply at 1-4 *with* Resp. at 8-11 *and* Surreply at 1-3),

6    making summary judgment inappropriate.[2]  *See* Fed. R. Civ. P. 56(a); *Aydin*, 718 F.2d at

7    902.  More to the point, Global does not raise any convincing arguments or evidence that

8    the correct result is anything other than what is dictated by the plain terms of the CA.[3]

9    In sum, Global has not demonstrated that it is entitled to summary judgment on

10   this issue.  Global's motion is DENIED on this issue.

11   **C.    The Alter-ego Issue**

12   Next, Global moves for summary judgment that it is not the alter-ego of

13   Concreteman.  (Mot. at 10-14.)  Global argues that it is a separate company from

14   Concreteman with a separate business model and separate purpose—in brief, Global is a

15   general contractor and Concreteman is a subcontractor.  (Fain Decl. ¶¶ 4-8.)  Global

16   argues that the requirements for alter-ego liability are not met even though Global and

17

----

18   [2] These disputed facts also prevent the court from granting Plaintiffs' very brief cross-
19   motion for summary judgment.  Plaintiffs present a cursory argument that the court should grant
     summary judgment on the question of whether Concreteman is bound by the terms of the CBA.
20   (Resp. at 10-11.)  The court will not grant this motion at this time given the presence of disputed
     facts, the paucity of briefing on this issue, and the fact that Concreteman (which did not join in
     this motion) has not had an adequate opportunity to respond.

21   [3] The court also DENIES as moot the motion to strike contained in Plaintiffs' surreply.
22   (Surreply (Dkt. # 23) at 3.)  Any ruling on the motion to strike would not affect the outcome of
     the summary judgment motion.

ORDER- 7

1    Concreteman are both owned by Mr. and Ms. Fain, have many of the same employees,

2    and otherwise resemble each other in various ways.  (Mot. at 10-14.)

3         The parties agree on the governing law.  They agree that the alter-ego doctrine is

4    "designed to prevent employers from escaping their collective bargaining obligations by

5    shifting work to non-union firms they also own."  *S. Cal. Painters v. Rodin & Co.*, 558

6    F.3d 1028, 1032 (9th Cir. 2009).  Under the alter-ego doctrine, union employers are not

7    allowed to create non-union alter-egos for the fraudulent purpose of avoiding their

8    collective bargaining obligations.  *Id.*  To determine whether a company is the alter-ego

9    of another company, the first step is to determine whether the two companies are a

10   "single employer."  *Id.*  The second step is to determine if the non-union alter-ego is

11   tainted by union animus or is a sham to avoid collective bargaining obligations.  *UA*

12   *Local 343*, 48 F.3d at 1470.

13        The second step of this inquiry is where the parties disagree.[4]  In particular, they

14   disagree about whether Mr. and Ms. Fain used Global as a "sham" to avoid collective

15   bargaining obligations.  Global contends that it made no attempt to avoid union

16   obligations.  Plaintiffs dispute that contention.

17        Plaintiffs present a coherent body of evidence to support their position.  Under

18   Plaintiffs' version of the facts, Mr. Fain controls the labor relations of both companies

19   (*see* Dwarzski Decl. (Dkt. # 19) Ex. B), Global and Concreteman hold themselves out as

20

21        [4] The parties agree that there are factual issues regarding the "single employer" inquiry
     and that it is not necessary to resolve these issues in ruling on Global's motion.  (*See, e.g.*, Mot.
22   at 5.)

ORDER- 8

one company (*see* Coffelt Decl. Ex. C), and there is evidence of Mr. Fain's union animus (Dwarzski Decl. Ex. A).  In particular, there is testimony by a union representative, Mr. Coffelt, that Mr. Fain became irritated with the union upon learning he would have to pay benefits for a certain employee, abruptly terminated a meeting, and thereafter transferred all cement work from Concreteman, the union company, to Global, the non-union company.  (*See id.* Ex. A at 46-48; Ex D.)  Plaintiffs point out the suspicious timing—namely, the fact that Mr. Fain transferred Concreteman's work to Global shortly after becoming upset about its union obligations.  (Resp. at 13.)

This theory is supported by some of Global's evidence as well.  Global's evidence suggests that Mr. Fain may have had an ongoing feud with the union and was not on friendly terms with union representatives, who he describes as "harassing" and "threatening" him and his employees.  (Fain Decl. ¶ 6.)  Mr. Fain testifies that "[t]he Cement Masons Union only seems to want to collect our dues and to shut down jobs being done by non-union contractors.  No one from the Union bothers to contact us.  If they had, they would have learned that we don't want to be a union shop."  (*Id.* ¶ 8.)  Global also presents evidence that its workers prefer not to be in a union because being non-union means the workers get their fringe benefit payments in their paychecks.  (Ward Decl. (Dkt. # 13) ¶ 3; Viggue Decl. (Dkt. # 14) ¶ 3-4 ("There was almost unanimous agreement that the employees didn't wish to be represented by the Cement Masons Union.").)  All in all, there is enough evidence for a reasonable jury to conclude that Mr. Fain transferred all of Concreteman's work to Global for the purpose of avoiding union

1    obligations.  *See Aydin*, 718 F.2d at 902.  There is also enough evidence for a reasonable

2    jury to find union animus.[5]

3           Accordingly, summary judgment is not appropriate on the alter-ego question.[6]  As

4    discussed, there is a genuine dispute with respect to a fact that is material to this issue.

5    The factual dispute is material because it bears directly on whether or not Global may be

6    held liable as an alter-ego for Concreteman's alleged failure to contribute to Plaintiffs'

7    trust funds.  *See UA Local 343*, 48 F.3d at 1470; *Anderson*, 477 U.S. at 248.  For these

8    reasons, Global's motion is DENIED on this issue.

9                              **III.    CONCLUSION**

10          For the foregoing reasons, Global's motion for partial summary judgment is

11   DENIED (Dkt. # 10).

12          Dated this 12th day of May, 2014.

13

14

15                                                        JAMES L. ROBART
                                                          United States District Judge
16

17

18

19   _____

20          [5] Global presents evidence to the contrary, but it is nowhere close to enough for the court
     to conclude that no reasonable jury could accept Plaintiffs' evidence and version of events.

21          [6] Global also discusses the so-called "reverse alter-ego" doctrine, which has no
     application to this case.  (*See* Mot. at 11.)  Likewise, Global's discussion of the estoppel doctrine
22   has no relevance to this case.  (*See id.* at 14.)

ORDER- 10